IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH LAZARD, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>ALL RESTORE, LLC,<br><br>        Defendant. | CIVIL ACTION<br>NO. 19-6040 |

**OPINION**

**Slomsky, J.**                                                                                                                             **March 29, 2021**

**I.    INTRODUCTION**

       Plaintiffs Kenneth Lazard and Leslie Brown bring this suit against Defendant All Restore, LLC, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq. ("PHRA"). In the First Amended Complaint ("FAC"), Plaintiffs seek damages and equitable relief, alleging that Defendant unlawfully discriminated against them based on their race. (Doc. No. 10.)

       Before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 13.) Defendant argues the FAC should be dismissed in its entirety because it fails to state a plausible claim for relief under Title VII, Section 1981, and the PHRA. Plaintiff submits, however, that the allegations are sufficient to withstand the Motion, and the FAC should not be dismissed.

       The Motion is now ripe for disposition. For reasons stated infra, Defendant's Motion to Dismiss will be denied.

1

## II. BACKGROUND[1]

On December 10, 2018, a "temp service" ("the Temp Agency") assigned Plaintiffs and two other individuals to work for Defendant as "laborers/cleaners" at a personal residence in Pottstown, Pennsylvania ("the Jobsite"). (Doc. No. 10 ¶¶ 18, 20.) Plaintiffs and the two individuals are African American. (See id. ¶¶ 3, 20.)

While working at the Jobsite, Plaintiffs allege that Defendant's "workm[e]n and/or employees" "directed" and "supervised" Plaintiffs, which included assigning them tasks and designating work for them to perform. (Id. ¶ 19.) Despite Plaintiffs allegedly "perform[ing] all of the assigned tasks that day without issue or problem," (id. ¶ 21), the following day the Temp Agency informed them that Defendant "requested Plaintiffs not be sent back to the [J]obsite" (id. ¶ 22) because they "supposedly . . . talked and smoked too much" while at the location on December 10, 2018. (Id., Ex. A at 10 ¶ 5; see also id. at 9 ¶ 5.) Shortly thereafter, Plaintiffs further allege that they learned "all 4 African American workers who had been at the [Job]site" on December 10, 2018 "were terminated by [Defendant]." (Doc. No. 10 ¶ 23.) Later that week, Plaintiff Lazard "drove past the [J]obsite" and observed "only Caucasian individuals" working there, (id. ¶ 24), leading him to believe that Plaintiffs "were replaced by Caucasian individuals at the [J]obsite." (Id., Ex. A at 9 ¶ 7; see also id. at 10 ¶ 7.)

In February 2019, Plaintiffs filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission. (See Doc. No. 10 ¶ 15.) In late September 2019, the EEOC issued to Plaintiffs Notices of Right to Sue. (See

---

[1] The following facts are taken from the FAC (Doc. No. 10) and attached exhibits and are accepted as true for purposes of this Opinion. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents.").

id. ¶ 16; see also id., Ex. B.)

On March 23, 2020, Plaintiffs filed the three-count FAC (Doc. No. 10) alleging that Defendant subjected them to racial discrimination, in violation of: (1) Title VII, 42 U.S.C. § 2000e et seq. (Count I); (2) Section 1981, 42 U.S.C. § 1981 (Count II); and (3) the PHRA, 43 P.S. § 951, et seq. (Count III). (See id. at 1.)

In the FAC, Plaintiffs characterize themselves as "either dual employees and/or independent [c]ontractor[s] of [Defendant] and the [T]emp [A]gency," claiming that they "had a direct contractual at will employment and/or independent contractor arrangement with both entities." (Id. ¶ 25.) Plaintiffs further allege that "race was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of [them], which included," inter alia, "Plaintiffs['] termination." (Id. ¶ 26.) Additionally, Plaintiffs seek punitive damages under Title VII and Section 1981 because "Defendant acted with malice and/or reckless indifference to Plaintiffs' protected rights by terminating all of the African American employees from the . . . [J]obsite because of their race" in an "outrageous" manner. (Id. ¶¶ 27-28.)

On April 3, 2020, Defendant filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 13.) In the Motion, Defendant argues that all claims in the FAC should be dismissed for two reasons: (1) Plaintiffs fail to allege sufficient facts to prove Defendant unlawfully discriminated against them on the basis of race (see Doc. No. 13-1 at 5); and (2) their claims fail as a matter of law because the FAC does not establish the requisite relationship between the parties under the relevant statutes (see id. at 5-10; Doc. No. 15 at 4-5). Specifically, Defendant avers Counts I and III should be dismissed because the FAC fails to plead an employment relationship between the parties under Title VII and the PHRA and because their alleged status as independent contractors

3

is fatal to these claims.  (See Doc. No. 13-1 at 5-9); see also 42 U.S.C. § 2000e-2(a)(1); 43 P.S. § 955(a).  As to Count II, Defendant contends the FAC fails to show the existence of a contractual relationship between the parties as required under Section 1981.  (See id. at 9-10); see also 42 U.S.C. § 1981(b).  Defendant additionally argues that Plaintiffs are not entitled to punitive damages because the FAC does not allege facts showing that Defendant discriminated against Plaintiffs with malice or reckless indifference to their federally protected rights.  (See id. at 10); see also § 1981a(b)(1).

On April 16, 2020, Plaintiffs filed a Response in Opposition to Defendant's Motion.  (Doc. No. 14.)  They argue the FAC "plausibly sets forth claims for racial discrimination" since it alleges that Defendant "terminated Plaintiffs and two other African American Workers after one day of satisfactory work and then replac[ed]" them and completed the work using solely Caucasian workers.  (Id. at 1.)  They highlight that the FAC alleges that the day after Plaintiffs were assigned to Defendant's Jobsite, the Temp Agency called Plaintiffs to inform them that Defendant "requested [they] not be sent back" to the location.  (Doc. No. 10 ¶ 22.)  Plaintiffs claim they later "learned that all 4 African American workers who had been at the [Job]site the previous day were terminated by [Defendant]."  (Id. ¶ 23.)  Moreover, they state that the FAC further alleges Plaintiff Lazard drove past the Jobsite later that week and observed only Caucasian individuals working there.  (See id. ¶ 24.)

Next, in the Response, Plaintiffs argue they have sufficiently alleged an employment relationship with Defendant under Title VII and the PHRA and a contractual relationship with Defendant under Section 1981.  (See Doc. No. 14 at 2-3.)  As to the Title VII claim in Count I, and the PHRA claim in Count III, Plaintiffs submit the allegation in the FAC—that they were assigned to Defendant's Jobsite by a Temp Agency—plausibly shows the requisite employment relationship

4

between the parties. (See id.) In support of this argument, Plaintiffs rely upon the holding in Faush v. Tuesday Morning, Inc., 808 F.3d 208, 218 (3d Cir. 2015) that "an individual assigned to a worksite by a temporary agency can also be an employee of the entity for which they are assigned for purposes of Title VII." (Id. at 2.)

Regarding their Section 1981 claim in Count II, Plaintiffs aver they have plausibly alleged Defendant's interference with their contractual relationship with the Temp Agency through race discrimination. (Id. at 3.) Plaintiffs also claim they are entitled to punitive damages because the FAC adequately alleges Defendant intentionally discriminated against them with malice or reckless indifference to their federal rights by terminating "an entire group of African American workers and replac[ing] them with a group of Caucasian [w]orkers." (Id. at 4.)

On April 23, 2020, Defendant filed a Reply in support of its Motion to Dismiss. (Doc. No. 15.) For reasons set forth below, Defendant's Motion will be denied.

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

5

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV. ANALYSIS

    A. **Race Discrimination Under Title VII and the PHRA**

Title VII and the PHRA both prohibit employment discrimination on the basis of race. See

6

42 U.S.C. § 2000e-2(a)(1); 43 P.S. § 955(a).[2] Because "[c]laims under the PHRA are interpreted coextensively with Title VII claims," the remainder of this section will outline the requirements as set forth under Title VII only. Brown v. J. Kaz, Inc., 581 F.3d 175, 179 n.1 (3d Cir. 2009) (alteration in original) (quotation marks omitted) (quoting Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006)); see also Pedro v. City Fitness, LLC, 803 F. App'x 647, 651 n.5 (3d Cir. 2020) (stating that discrimination claims under the PHRA are "analyzed under the same standard as Title VII claims."). Here, Plaintiffs have successfully pled a Title VII race discrimination claim in the FAC.

### 1. Plaintiffs Have Plausibly Alleged an Employment Relationship with Defendant

As an initial matter, in order to bring a Title VII claim, Plaintiffs must allege an employment relationship with Defendant. See Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013). In Nationwide Mutual Insurance Co. v. Darden, the United States Supreme Court enumerated the following factors to determine whether an individual is an "employee" under Title VII:

> [T]he hiring party's right to control the manner and means by which the product is accomplished. . . .; the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

---

[2] Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] . . . terms . . . [or] conditions . . . of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Likewise, the PHRA makes it unlawful for an employer to discriminate against "any individual or independent contractor . . . with respect to [his or her] terms . . . [or] conditions . . . of employment or contract" on the basis of, inter alia, race, color, religion, sex, or national origin. 43 P.S. § 955(a).

503 U.S. 318, 323-24 (1992) (quoting Cmty. For Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989)).

In Covington v. International Ass'n of Approved Basketball Officials, the Third Circuit Court of Appeals condensed the Darden factors into a test, which "focus[es] the employment relationship analysis on 'the level of control the defendant[s] . . . exerted over the plaintiff'" by asking whether the defendant: (1) paid the plaintiff; (2) hired or fired the plaintiff; and (3) maintained control over the plaintiff's daily activities. 710 F.3d 114, 119 (second alteration in original) (citation and internal quotation marks omitted). Here, the FAC does not allege facts on the first factor, i.e., whether Defendant or the Temp Agency paid Plaintiffs' wages.[3] It does allege, however, sufficient facts under the second and third factors.

As to the second factor, the FAC alleges Defendant had the authority to permanently terminate Plaintiffs from its Jobsite. Defendant argues, however, that the FAC fails to allege that it fired Plaintiffs. (See Doc. No. 13-1 at 6.) To the contrary, Plaintiffs assert that the FAC allges Defendant: (1) asked the Temp Agency not to send Plaintiffs back to the location; and (2) terminated "all 4 African American workers" who were assigned to work there on December 10, 2018. (Doc. No. 10 ¶¶ 22-23.)

Regarding the third factor, the FAC does allege Defendant maintained control over Plaintiffs' daily work activities at the Jobsite. (See id. ¶ 19.) Although Defendant contends in the Motion that the FAC is "completely devoid" of any facts showing that it "had any indicia of control over Plaintiffs' employment" (Doc. No. 13-1 at 6), the FAC alleges they were sent to Defendant's

---

[3] As stated in note 4, infra, the factual allegations in the FAC support an inference that Defendant is a client of the Temp Agency that assigned Plaintiffs to its Jobsite. For this reason, Plaintiffs' wages may very well derive from the fee Defendant pays to the Temp Agency for its services.

Jobsite to work as laborers/cleaners and, while they were there, Defendant "directed [and] supervised" Plaintiffs, "assigned [them] tasks and told [them] what work to perform at all times." (Doc. No. 10 ¶¶ 18-19.) Moreover, in their Response, Plaintiffs rely on Faush to argue that both Defendant and the Temp Agency were Plaintiffs' employers under Title VII. (See Doc. No. 14 at 2) (citing Faush, 808 F.3d at 218).

In Faush, the Third Circuit held that a temporary ("temp") agency and its client may be joint employers of a temporary employee assigned to work for the client. 808 F.3d at 218. The court found that although the temp agency had the power to hire and fire the plaintiff from its own employ, the defendant-client had the ultimate authority to terminate the plaintiff from its premises, cutting the "hire or fire" factor in favor of the plaintiff. See id. at 216. Moreover, the defendant in Faush shared responsibility with the temp agency for the plaintiff's payment and had extensive control over his workday activities through supervision, task assignment, and training. See id. at 216-17. The court concluded that the defendant also was the plaintiff's employer under Title VII, stating, in pertinent part:

> [T]he [hiring and firing] factors . . . provide . . . weak support for [the defendant-client's] position. To be sure, [the temp agency] was the entity that hired [the plaintiff] and dispatched him to the [defendant's] store. [The defendant] obviously did not have the power to terminate [the plaintiff's] employment with [the temp agency] or any obligation to pay him unemployment benefits. [The defendant] did, however, have ultimate control over whether [the plaintiff] was permitted to work at its store. If [the defendant] was unhappy with any temporary employee for any reason, it had the power to demand a replacement from [the temp agency] and to prevent the ejected employee from returning to the store. Nothing in the record suggests that [the temp agency] had any policy or practice, much less obligation, to continue to pay a temporary employee who was not then on a temporary assignment or to provide an immediate alternative assignment for an employee turned away from a job. See Ruehl v. Viacom, Inc., 500 F.3d 375, 380 [n.6] (3d Cir. 2007) (when determining whether there is any genuine issue of material fact, we are required to "draw[ ] all reasonable inferences in favor of the nonmoving party").
>
> Finally, [the defendant's] control over the temporary employees' daily activities overwhelmingly favors [the plaintiff]. [The plaintiff] worked at . . . [the

9

>
> defendant's] store, rather than at a remote site controlled by [the temp agency]. Admittedly, it was of no concern to [the defendant] whether [the plaintiff] reported to the store or whether another temporary employee showed up in his place. Once he was there, however, [the defendant's] personnel gave [the plaintiff] assignments, directly supervised him, provided site-specific training, furnished any equipment and materials necessary, and verified the number of hours he worked on a daily basis. . . . Thus, unlike a contractor relationship, in which an agency is hired to perform a discrete task and oversees its employees' work in the completion of that project, the [temp agency] employees were hired on an hourly basis to perform services under the supervision of [the defendant's] management, which exercised control over the temporary employees' daily work activities.

Id. (footnote omitted) (sixteenth alteration in original).

Here, like the plaintiff in Faush, Plaintiffs here are temporary employees assigned to work for a client of the Temp Agency—Defendant All Restore, LLC.[4] (See Doc. No. 10 ¶ 18); Faush, 808 F.3d at 209. First, similar to the facts in that case, the allegations in the FAC show that Defendant had the authority to prevent temporary employees from returning to its Jobsite and it actually exercised its authority with regard to Plaintiffs. (See id. ¶¶ 22-23.) Thus, like the defendant in Faush, Defendant All Restore had "ultimate control over whether [Plaintiffs were] permitted to work at its [Jobsite]." 808 F.3d at 216. Additionally, nothing in the FAC suggests that the Temp Agency had any policy or obligation to continue paying Plaintiffs "who were not then . . . temporar[ily] assign[ed] [to Defendant's Jobsite] or to provide [them with] an immediate alternative assignment" after being turned away by Defendant. Id.

Second, similar to the plaintiff in Faush, Plaintiffs here have alleged that Defendant exerted control over their daily work activities through supervision, task assignment, and direction. (See

---

[4] The FAC does not stipulate that Defendant was a client of the Temp Agency. It does, however, allege that the Temp Agency assigned Plaintiffs to work for Defendant at its Jobsite and Defendant relayed to the Temp Agency that Plaintiffs were not to return the following day. (See Doc. No. 10 ¶¶ 18, 20-23.) Thus, viewing these facts in the light most favorable to Plaintiffs and drawing all inferences in their favor, they have alleged facts sufficient to establish an inference that Defendant was a client of the Temp Agency.

Doc. No. 10 at 3 ¶ 19.)

> Finally, the court in Faush noted that applicable EEOC guidance provides as follows:
>
> "[A] client of a temporary employment agency typically qualifies as an employer of the temporary worker during the job assignment [for purposes of Title VII]. . . . because the client usually exercises significant supervisory control over the worker." EEOC Notice 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, Dec. 3, 1997, 1997 WL 33159161, at *5-6. Although "the EEOC's Compliance Manual [and enforcement guidance] is not controlling[,] . . . it may constitute a 'body of experience and informed judgment' to which we may resort for guidance." [Clackamas v. Gastroenterology Assocs., P. C. v. Wells, 538 U.S. 440, 449 n.9 (2003) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944))].

808 F.3d at 219 (second, third, and fourth alterations in original).

Thus, viewing the facts in the light most favorable to Plaintiffs, the FAC plausibly alleges that Defendant had control over the employment with Plaintiffs because it could: (1) fire them from its premises; and (2) control their daily work activities.[5] Accordingly, Plaintiffs have alleged sufficient facts to establish an employment relationship with Defendant under Title VII to withstand the instant Motion to Dismiss.[6]

### 2. Plaintiffs Have Plausibly Alleged an Inference of Unlawful Discrimination

"In order to state a viable Title VII claim, a plaintiff must show that she [or he] (1) belongs

---

[5] In Faush v. Tuesday Morning, Inc., 808 F.3d 208, 215-16 (3d Cir. 2015), the Third Circuit found that the plaintiff also established the first Covington factor relating to payment because the defendant-client was responsible for reporting to the temporary agency the number of hours each temporary employee worked at its store, which the agency then used to calculate the employees' wages. On this point, the court in Faush, however, was ruling on a motion for summary judgment as opposed to a motion to dismiss and thus had the benefit of discovery on this point. See id. at 220.

[6] Because the Court has determined that Plaintiffs have plausibly established an employment relationship with Defendant, it need not address whether Plaintiffs are independent contractors under the PHRA. (See Doc. No. 10 ¶ 25.) In any event, if Plaintiffs are still relying on the notion that they are independent contractors under the PHRA, this theory may be the subject of discovery in this case.

to a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Bullock v. City of Philadelphia, No. 19-1183, 2020 WL 4365601, at *3 (E.D. Pa. July 30, 2020) (quotation omitted); see also Sherrod v. Phila. Gas Works, 57 F. App'x 68, 73 (3d Cir. 2003). To survive a motion to dismiss, Plaintiffs must "plead[] sufficient factual matter that permits the reasonable inference that [they] [were] terminated . . . because of [their] race." Golod v. Bank of America Corp., 403 F. App'x 699, 702 (3d Cir. 2010); see also Twillie v. Erie Sch. Dist., No. 11-165, 2013 WL 4666072, at *4 (W.D. Pa. Aug. 30, 2013) ("Plaintiff[s] must set forth allegations that state a plausible claim of discriminatory treatment.").

Here, Plaintiffs have sufficiently pled a Title VII claim in Count I because the FAC plausibly alleges the substantive elements of race discrimination.[7] As to the first two elements, Plaintiffs are undisputedly members of a protected class and were qualified for the position as "laborers/cleaners." (Doc. No. 10 ¶ 18; see also Doc. Nos. 13-1 at 5; 15 at 2-4.) As to the third element, Plaintiffs suffered an adverse employment action because they were terminated from Defendant's Jobsite and presumably not allowed to return. See supra Section IV.A.1; see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (defining adverse employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); (Doc. No. 10 ¶¶ 22-23).

Regarding the fourth element, the parties dispute whether the allegations in the FAC

---

[7] As noted in Section IV.A, supra, Title VII and PHRA claims are "interpreted coextensively." Brown v. J. Kaz, Inc., 581 F.3d 175, 179 n.1 (3d Cir. 2009) (citation and quotation marks omitted). Both claims consist of the same substantive elements. See Barnees v. Nationwide Mut. Ins. Co., 598 F. App'x 86, 89 (3d Cir. 2015) (listing the elements of race discrimination under Title VII and the PHRA as the same).

plausibly show an inference of unlawful discrimination. (See Doc. Nos. 14 at 2-3; 15 at 2.) Plaintiffs may establish an inference of unlawful discrimination "in a number of ways." Golod, 403 F. App'x at 702 n.2. In the Third Circuit, the fact that a plaintiff was replaced by an individual who is not a member of their protected class is sufficient to establish an inference of discrimination. See Johnson v. Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239, 242 (3d Cir. 2007) (citation omitted) (finding that decision to replace an African American plaintiff with a Caucasian worker was sufficient to establish "the required inference of discrimination at the prima facie stage of the Title VII analysis.").[8]

Here, Plaintiffs are protected class members under Title VII because they are claiming they were discriminated against because of their African American race. See 42 U.S.C. § 2000e-2(a) (listing race as a protected class). The FAC alleges that Plaintiffs and two other African American workers were terminated by Defendant and "replaced by Caucasian individuals at the [J]obsite" after completing one day of satisfactory work under Defendant's direction. (Doc. No. 10, Ex. A at 9 ¶ 7; see also Doc. No. 10 ¶¶ 18-24.)

Defendant contends, however, that Plaintiffs have not plausibly alleged an inference of unlawful discrimination because the FAC "is completely devoid of any comparators or other factual allegations raising an inference that any actions taken by [Defendant] are discriminatory." (Doc. No. 15 at 2.) But, as noted above, the replacement of Plaintiffs on the Jobsite by Caucasians

---

[8] Although the disposition of this case differs from that in Johnson v. Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239 (3d Cir. 2007), the Third Circuit's analysis in Johnson may be applied here as the FAC is being analyzed under a lower standard. See Pedro v. City Fitness, LLC, 803 F. App'x 647, 651 (3d Cir. 2020) (second alteration in original) (citations omitted) ("'[A] prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim [under Rule 12(b)(6)].' [Rather], the proper question to ask at the Rule 12(b)(6) stage is simply whether the plaintiff's pleading has alleged enough facts to 'raise a reasonable expectation that discovery will reveal evidence of each element.'").

raises an inference of discrimination at this stage.

Because the FAC plausibly alleges an inference of unlawful discrimination, Plaintiffs have adequately pled a Title VII claim under Rule 12(b)(6). Accordingly, Defendant's Motion to Dismiss will be denied as to Counts I (Title VII) and III (PHRA).

**B.    Race Discrimination Under 42 U.S.C. § 1981**

Section 1981 prohibits race discrimination in the making and enforcement of contracts. See 42 U.S.C. § 1981(a). To state a claim under Section 1981, a plaintiff "must [plausibly] allege facts in support of the following elements: (1) [plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts . . . ."[9] Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001) (third alteration in original) (citation and quotation marks omitted).

The parties do not dispute the first element—that Plaintiffs, who are both African Americans, are members of a racial minority. (See Doc. Nos. 13-1 at 5; 15 at 2-4.) And as discussed infra, the second and third elements are supported by the FAC; thus, Plaintiffs have plausibly alleged a Section 1981 claim in Count II.

**1.    Plaintiffs Have Plausibly Alleged an Inference of Intentional Discrimination**

To state a Section 1981 claim, the second element "requires proof of purposeful or intentional discrimination." Collins v. Christie, No. 06-4702, 2008 WL 2736418, at *10 (E.D. Pa. July 11, 2008); see also Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982). This means Plaintiffs must "allege facts that would support an inference that [Defendant] intended

---

[9] "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

14

to discriminate on the basis of race . . . ." Clarke v. Eisenhower, 199 F. App'x 174, 175 (3d Cir. 2006).

Here, Defendant argues that the FAC fails to plausibly allege an inference of intentional discrimination. (See Doc. No. 15 at 2.) This argument is unavailing. The FAC alleges the Temp Agency sent Plaintiffs and two other African American workers to the Jobsite where they worked under Defendant's direction and supervision. (See Doc. No. 10 ¶¶ 18-20.) After Plaintiffs performed just one day of satisfactory work, Defendant terminated them by telling the Temp Agency not to send any of the four African American individuals back to its Jobsite the following day. (See id. ¶¶ 21-23.) Later that week, Plaintiff Lazard "drove past the [J]obsite" and observed "only Caucasian individuals" working there. (Id. ¶ 24; see also id., Ex. A at 9-10.)

Therefore, viewing these facts in the light most favorable to Plaintiffs and drawing all inferences in their favor, the FAC plausibly alleges that Defendants "intended to discriminate [against Plaintiffs] on the basis of race." Clarke, 199 F. App'x at 175.

### 2. Plaintiffs Plausibly Allege Interference With a Contractual Relationship

The third element requires Plaintiffs to plausibly allege that Defendant discriminated against them on the basis of race in the making or enforcement of a contract. See Brown, 250 F.3d at 797. A plaintiff may bring a Section 1981 claim against parties to a contract, as well as third parties who intentionally interfere with parties' contractual rights. See McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 699 (E.D. Pa. 2002) (citations omitted) ("A third party incurs Section 1981 liability for intentionally interfering, on the basis of race, with another's right to make and enforce contracts.").

Here, Defendant contends that Plaintiffs' Section 1981 claims should be dismissed as a matter of law because the FAC "fail[s] to plead that they entered into any contract with [Defendant]

15

or that they ever attempted to do so." (Doc. No. 15 at 5; see also Doc. No. 13-1 at 9-10.) Defendant also alleges that the employment relationship was between Plaintiffs and the Temp Agency only. (See ids.) These arguments fail, however, because Plaintiffs need not allege that they contracted with Defendant. As noted above, Defendant may incur Section 1981 liability for intentionally interfering with Plaintiffs' contractual or at will employment relationship with the Temp Agency. See McClease, 226 F. Supp. 2d at 699, 702.

Here, the FAC plausibly alleges that Defendant's termination of Plaintiffs from its Jobsite interfered with their contractual relationship with the Temp Agency. In McClease, the client of a temporary agency argued that it did not have a contract with the plaintiff to trigger Section 1981 liability because the plaintiff was a temporary employee assigned to its facility pursuant to a contract between the defendants and the temporary agency and "thus no defendant ever directly employed him." Id. at 689-99. The court rejected this argument in denying the defendant's motion to dismiss the plaintiff's Section 1981 claims, holding that the statute covers a defendant's termination of a temporary employee on the basis of race which interferes with the employee's contractual or at-will employment with a temp agency. Id. at 702.

Similar to the facts in McClease, the facts here show that Defendant dismissed Plaintiffs from its Jobsite on the basis of race, resulting in "monetary damages." (Doc. No. 10 ¶¶ 34, 40, 45; see also id. ¶¶ 22-23, 26, 37.) While the FAC does not detail the impact of Defendant's dismissal on Plaintiffs' relationship with the Temp Agency, the Court "infer[s] from [Plaintiffs'] allegations concerning the harm [they have] suffered that the dismissal disrupted either [their] contractual or employment relationship with [the Temp Agency]." McClease, 226 F. Supp. 2d at 699 (inferring from plaintiff's allegation of pecuniary damages that contractual or employment relationship with temp agency was harmed as a result of client's dismissal of plaintiff from its jobsite).

Accordingly, Plaintiffs have plausibly alleged that Defendant's termination interfered with their contractual relationship with the Temp Agency for purposes of their Section 1981 claim. Therefore, Defendant's Motion to Dismiss will also be denied as to Count II (Section 1981).

### C.      Punitive Damages Under Title VII and Section 1981

Punitive damages are available under Title VII and Section 1981[10] where a plaintiff demonstrates that a defendant engaged in discriminatory practices "with malice or with reckless indifference to the[ir] federally protected rights . . . ." 42 U.S.C. § 1981a(b)(1); see also Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999); Le v. Univ. of Pa., 321 F.3d 403, 409 n.4 (3d Cir. 2003).  While an employer's "egregious" or "outrageous" conduct may be evidence of their malicious or reckless state of mind, such a showing is not necessary to establish the requisite intent under the statutes.  Kolstad, 527 U.S. at 534-35.  Instead, to obtain punitive damages, Plaintiffs must show that Defendant intentionally discriminated against them "in the face of a perceived risk that its actions [would] violate federal law . . . ." Id. at 536; see also id. at 527 ("The terms 'malice' and 'reckless indifference' pertain not to the employer's awareness that it is engaging in discrimination, but to its knowledge that it may be acting in violation of federal law.").  At the pleading stage, however, Plaintiffs need not allege "glaring examples of obvious malice or reckless indifference" by Defendants.  Bellamy v. Waterfront Square Condos. & Spa, No. 12-6618, 2013 WL 2333399, at *6 (E.D. Pa. May 29, 2013) (quoting Taylor v. Harrisburg Area Cmty. Coll., No. 1:12-0169, 2012 WL 1886721, at *4 (M.D. Pa. May 23, 2012)).

At this stage of the proceedings, the Court is unable to find that Plaintiffs "will not be able to prove a set of facts in support of [their] claim for punitive damages against . . . Defendant."

---

[10]   Punitive damages are not available under the PHRA.  See Hoy v. Angelone, 720 A.2d 745, 751 (Pa. 1998).

Taylor, 2012 WL 1886721, at *4.  In the FAC, Plaintiffs allege that they were two of four African American temporary workers assigned to Defendant's Jobsite, all of whom were dismissed after one day of satisfactory work and replaced with Caucasian workers.  (See Doc. No. 10 ¶¶ 18, 20-24; see also id., Ex. A.)  Therefore, viewing the FAC in the light most favorable to Plaintiffs and drawing all inferences in their favor, they have alleged sufficient facts at this stage to support an inference of intentional discrimination by Defendant in the face of a perceived risk of violating federal law.  Consequently, Defendant's Motion will be denied with respect to Plaintiffs' claims for punitive damages under Counts I (Title VII) and II (Section 1981) of the FAC.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 13) will be denied in its entirety.  An appropriate Order follows.